614 F.2d 65
 W. E. JACKSON, I. G. Shuman, Jr., W. G. Fagan, G. L.
LeBlanc, M. A. Hairston, R. I. Jackson, J. D.
Hairston and W. P. Thorup, Jr., d/b/a
Port Everglades Pilots'
Association,
Plaintiffs-Appellees,
v.
MARINE EXPLORATION COMPANY, INC., a Florida Corporation, and
Greyhound Leasing& Financial Corporation, a
Delaware Corporation, in personam,
Defendants-Appellants.
 No. 78-2703
 
 Summary Calendar.*
 United States Court of Appeals,
Fifth Circuit.
 March 20, 1980.
 Robert T. Wright, Miami, Fla., for Greyhound Leasing & Financial Corp.
 Underwood, Gillis, Karcher, Reinert & Gordon, David P. Karcher, Miami, Fla., for plaintiffs-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before BROWN, TJOFLAT and FRANK M. JOHNSON, Jr., Circuit Judges.
 JOHN R. BROWN, Circuit Judge:
 
 
 1
 The Appellee, the Port Everglades Pilots Association (PILOTS) filed this admiralty complaint In personam against Marine Exploration Company, Inc. (MECI), and Greyhound Leasing and Financial Corporation (Greyhound), claiming pilotage fees for piloting rendered to three tugs and three barges from October 1, 1975, through June 30, 1976. MECI admitted owning the two tugs TAMMY W. and DENISE. Greyhound admitted the ownership of the tug MITZI and the three barges MECI 6, MECI 7 and MECI 8. In almost every instance, the pilotage fees sought were for services actually rendered.[1]
 
 
 2
 The pilotage fees were set according to rates promulgated by the Florida Board of Pilot Commissioners, as authorized by Fla.Stat.Ann. § 310.11 (1975) (amended version at § 310.151 (West Supp.1979)). These rates provide for a fee of one and a half of the usual rate for a tug when that tug has a barge in tow. MECI has already paid under protest $32,875.52 of the $58,118.11 of the amounts charged, or approximately the amount that represents the charges for the tug alone. MECI refused to pay the rest because it says this amount is attributable to the fact that the barges were in tow, and barges should be exempt from pilotage fees because they draw less than seven feet of water.[2]
 
 
 3
 After a bench trial the District Court issued Findings of Fact and Conclusions of Law and entered a judgment holding MECI and Greyhound jointly and severally liable for the unpaid, billed amount, $25,242.59, for pilotage assessed for the barges. Greyhound appeals from this judgment, and we affirm.
 
 
 4
 Rule 52(a) of the Federal Rules of Civil Procedure requires that after a trial without a jury, the Trial Court shall issue Findings of Fact and Conclusions of Law to support its judgment. J. Moore, 5A Federal Practice P 52.05(1) at 2691 (1979). We have, on a number of occasions, remanded for such findings. E. g., Complaint of Ithaca Corp., 582 F.2d 3 (5th Cir. 1978); Armstrong v. Collier, 536 F.2d 72 (5th Cir. 1976); Echols v. Sullivan, 521 F.2d 206 (5th Cir. 1975). But for the reasons pointed out below, nothing would be served by such a time-consuming process here. United States Trust Company of New York v. Sears, 29 F.Supp. 643 (D.Conn.1939). It is not necessary for the District Court to go into minute detail to state facts which are already admitted in the record. Id. at 645.
 
 
 5
 In the instant case, the Findings of Fact and Conclusions of Law set forth the reasons for MECI's liability, but Greyhound is not even mentioned except in the separate judgment. Greyhound therefore contends the Findings of Fact and Conclusions of Law are inadequate. The District Court certainly could have gone into some detail in the Findings and Conclusions concerning Greyhound's liability. This would have aided us significantly in our review of this case. See Irish v. United States, 225 F.2d 3, 21 (9th Cir. 1955). But it is clear to us from the evidence in the record that Greyhound owned the barges in question and that only pilotage fees assessed for the barges are owing at this time. Under the language of the Florida statute, §§ 310 Et seq., Greyhound as owner of these vessels is clearly liable. Furthermore, there is no reason why the District Court could not hold Greyhound jointly and severally liable with MECI since each had a statutory liability for such charges.
 
 
 6
 Greyhound's alternative contention is that this is not an admiralty action, but an action for accounts stated. The reasoning behind this assertion is that the provisions concerning pilotage fees do not authorize specifically a suit to recover fees for pilotage services actually rendered. In contrast, an action to recover compulsory pilotage fees, when pilotage services are offered but refused, is specifically mentioned by § 310.161. Greyhound says this means there is no admiralty action to recover for services actually rendered. Therefore, the action is for accounts stated, and since the accounts for pilotage fees were rendered only to MECI, Greyhound cannot under Florida law and practice be liable for them.
 
 
 7
 We find no merit to this argument. The fact that an action for compulsory pilotage is more explicitly created is irrelevant. An action to recover fees for services never rendered must of course be expressly created by statute; otherwise, it could not exist at all. We believe the right to collect pilotage fees for services actually rendered, as created by § 310.151, implies a right to bring an action for these fees. And it is a well-settled principle of admiralty law that claims for pilotage fees are classic cases of admiralty jurisdiction. The Glenearne, 7 F. 604, 606 (9th Cir. 1881); See Berwind-White Coal Mining Co. v. New York City, 1943 A.M.C. 682, 135 F.2d 443, 446 (2d Cir. 1943) (admiralty jurisdiction exists when subject matter of contract relates entirely to navigation and commerce on navigable waters).
 
 
 8
 For the foregoing reasons the decision of the District Court is affirmed.
 
 
 9
 AFFIRMED.
 
 
 
 *
 Fed.R.App.P. 34(a); 5th Cir. R. 18
 
 
 [1]
 The PILOTS had also sought compulsory pilotage fees, pursuant to Fla.Stat.Ann. § 310.161 (West Supp.1979), for pilotage services which were offered to MECI and refused. In this context, MECI challenged the constitutionality of § 310.11. We rejected this in Jackson v. Marine Exploration Company, Inc., 583 F.2d 1336, 1979 A.M.C. 1331 (5th Cir. 1978) (Brown, C. J.)
 
 
 [2]
 Although Greyhound does not raise the issue on appeal, both that company and MECI asserted at trial that Fla.Stat. § 310.141 applied to exempt the barges from pilotage fees because they draw less than seven feet of water. The rate schedule promulgated under former § 310.11, and still in effect under the amended rate provision, § 310.151, imposes a charge of one and a half times the normal pilotage fees when the barge is in tow behind a tug on a hawser, despite the fact that these barges never draw as much as seven feet. We agree with the District Court's implicit rejection of this argument in holding the defendants liable for the unpaid fee. No matter how many feet the barge draws, it is part of a flotilla, a significant part of which draws more than seven feet. Moreover, this additional charge is readily justified because of the added difficulty of piloting the tug with a barge in tow. We therefore see no conflict between § 310.141 and the one-and-a-half-times rate